**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 N. California Boulevard, Floor 9
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JAMES WHALEN and VICTOR FUENTES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NBA PROPERTIES, INC.

Defendant.

Case No. 3:25-CV-01030-CRB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO TRANSFER (ECF NOS. 26-28)**

Date: June 20, 2025
Time: 10:00am (Zoom)
Courtroom: 6, 17th Floor
Judge: Hon. Charles R. Breyer

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. DEFENDANT CANNOT SHOW THE HYPERLINK TO THE SUBSCRIBER AGREEMENT ON THE APP WAS REASONABLY CONSPICUOUS ..... 5

A. The Context Of The Transaction Does Not Support Notice Because The One-Time Purchase Of A Season Long Subscription Undermines Notice ..... 5

B. The Design And Content Of The App Has Multiple Indicia Of Inconspicuousness, Precluding A Finding Of Notice ..... 6

1. The Hyperlink Is Buried In A Large Paragraph Of Text Detailing Other Terms ..... 6

2. The Hyperlink To The Subscriber Agreement Is Merely Underlined And In The Same Color As The Surrounding Text ..... 7

3. The Hyperlink Is In Tiny Font And Does Not Stand Out From The Clutter Of The Page ..... 9

4. The Hyperlinked Is Not Directly Above Or Below The "Agree And Subscribe" Button ..... 11

II. DEFENDANT CANNOT SHOW THE HYPERLINK TO THE TERMS OF USE WITHIN THE SUBSCRIBER AGREEMENT WAS REASONABLY CONSPICUOUS ..... 11

III. DEFENDANT CANNOT SHOW THAT THE E-MAIL UPDATE PUT PLAINTIFF FUENTES ON NOTICE OF THE TERMS OF USE ..... 13

IV. THERE IS NO BASIS TO TRANSFER THIS DISPUTE TO THE SOUTHERN DISTRICT OF NEW YORK ..... 14

V. PLAINTIFFS RESERVE THE RIGHT TO CHALLENGE THE ENFORCEABILITY OF THE ARBITRATION CLAUSE ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Anyasulu v. Tempur Sealy Int'l, Inc.*,
745 F. Supp. 3d 913 (N.D. Cal. 2024) .......... 11

*Ballou v. Asset Mktg. Servs., LLC*,
46 F.4th 844 (8th Cir. 2022) .......... 2, 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... passim

*Burzdak v. Universal Screen Arts, Inc.*,
2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) .......... 7, 10

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 2, 5, 11

*Edwards v. MUBI, Inc.*,
2025 WL 985130 (N.D. Cal. Mar. 31, 2025) .......... 8, 11

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 287320 (C.D. Cal. Jan. 23, 2025) .......... 8

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... passim

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) .......... 15

*Herzog. v. Super. Ct.*,
101 Cal. App. 5th 1280 (2024) .......... 7

*Ireland-Gordy v. Tile, Inc.*,
760 F. Supp. 3d 946 (N.D. Cal. 2024) .......... 13

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 8, 9

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 4

*Lopez v. Dave Inc.*,
2023 WL 8594393 (9th Cir. Dec. 12, 2023) .......... 2, 8

*Massel v. SuccessfulMatch.com*,
718 F. Supp. 3d 1112 (N.D. Cal. 2024) .......... 8

*McGhee v. N. Am. Bancard, LLC*,
2017 WL 3118799 (S.D. Cal. July 21, 2017) ........ 12

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 5

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
60 F. Supp. 3d 1109 (E.D. Cal. 2014) ........ 4

*Morrison v. Yippee Ent., Inc.*,
756 F. Supp. 3d 842 (S.D. Cal. 2024) ........ 2, 6

*Pizarro v. QuinStreet, Inc.*,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ........ 8

*Pliszka v. Axos Bank*,
2024 WL 4194338 (S.D. Cal. Sept. 13, 2024) ........ 13

*Ramirez v. Trusper, Inc.*,
2024 WL 4479862 (N.D. Cal. Oct. 11, 2024) ........ 4, 11, 12

*Rocha v. Urb. Outfitters, Inc.*,
2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ........ 8, 10

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) ........ 2, 6, 10, 14

*Seneca v. Homeaglow Inc.*,
2024 WL 750029 (C.D. Cal. Feb. 7, 2024) ........ 7, 14

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) ........ 8, 9

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ........ 1

*Shalomayev v. Altice USA, Inc.*,
2022 WL 2359406 (E.D.N.Y. June 30, 2022) ........ 12

*Sifuentes v. Dropbox, Inc.*,
2022 WL 2673080 (N.D. Cal. June 29, 2022) ........ 4, 13

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ........ 4

*Tejon v. Zeus Networks, LLC*,
725 F. Supp. 3d 1351 (S.D. Fla. 2024) ........ 7

*Trans-Tec Asia v. M/V Harmony Container*,
518 F.3d 1120 (9th Cir. 2008) ........ 5

*Wilson v. Hatch Bank*,
2024 WL 1355492 (S.D. Cal. Mar. 29, 2024) ..... 12

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ..... 12

## INTRODUCTION

As the Ninth Circuit has made clear, "[w]ebsite [and app] users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). And "[b]ecause online providers have complete control over the design of their websites [or apps], the onus must be on website [or app] owners to put users on notice of the terms to which they wish to bind consumers." *Id.* (cleaned up). "This is not hard to accomplish, as the enormous volume of commerce on the Internet attests." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016). This is how Defendant chose to "accomplish" that task:



ECF No. 28-1 ("Ebanyat Decl.") at Ex. 1. Far from putting reasonable users like Plaintiffs on notice of Defendant's Subscriber Agreement, Defendant's sign-up flow has seemingly *every factor* that courts have found renders a hyperlink too inconspicuous for notice. The hyperlink is pictured in small text, in the same color as the surrounding text, and is buried in a lengthy paragraph detailing extraneous terms. *See*, *e.g.*, *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *9-*10 (N.D. Cal. July 31, 2023); *Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 850 (S.D. Cal. 2024). The hyperlink is merely underlined, even though the Ninth Circuit has clearly held that "[a] web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text." *Berman*, 30 F.4th at 857; *see also Lopez v. Dave Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023) ("[A]lthough the term 'TOS' is underlined, this alone is insufficient to alert a reasonably prudent internet user that a clickable link exists.") (cleaned up). The hyperlink "is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text," including multiple large buttons, form fields for payment, and promotional language. *Id.* And the hyperlink is buried in a lengthy paragraph, and thus, "not located directly above or below the action … button." *Godun v. JustAnswer LLC*, 135 F.4th 699, 711 (9th Cir. 2025) (cleaned up); *see also Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025).

Indeed, Defendant was so desperate to avoid these attributes that its Motions submit a cropped, close-up screenshot of the purchase webpage, with most of the webpage omitted," making it impossible for the Court to determine whether "the relevant terms are reasonably conspicuous to the user." *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 861 (8th Cir. 2022). This is improper; the full screen consumers encounter must be analyzed. *Id.* And as compared to the examples below where the Ninth Circuit and various district courts have found hyperlinks to be inconspicuous, the design and content of Defendant's full screen (pictured above) renders the hyperlink too inconspicuous for notice:

//

//

//

//




***Berman***, **30 F.4th at 861**




***Sadlock***, **2023 WL 4869245, at**




***Morrison***, **756 F. Supp. 3d at 848**




***Godun***, **135 F.4th at 705**




***Lopez v. Dave Inc.***, **2022 WL 17089824, at *2 (N.D. Cal. Nov. 21, 2022), *aff'd*, 2023 WL 8594393 (9th Cir. Dec. 12, 2023)**

Beyond this, the forum selection and arbitration clauses at issue here are not even contained in the hyperlinked Subscriber Agreement. Instead, they are contained in the Terms of Use—an entirely separate document hyperlinked *within* the Subscriber Agreement. "It stretches credulity to assert that

the actual page that is linked to the [page plaintiff] filled out does not govern that application, but rather another page linked to the page that is linked to the application does." *Ramirez v. Trusper, Inc.*, 2024 WL 4479862, at *6 (N.D. Cal. Oct. 11, 2024) (cleaned up).

Defendant also contends Plaintiff Fuentes (but not Plaintiff Whalen) was put on notice of the Terms of Use via e-mail. But "there is nothing in the record to suggest that Plaintiff [Fuentes] saw or read the email, such as a read receipt reflecting that Plaintiff [Fuentes] opened the email," and "[t]here is nothing in the record to suggest that Plaintiff [Fuentes] could not use the service until he indicated his assent, that he would have been advised of new terms and conditions while using Defendant's services, or that Defendant ever tracked whether Plaintiff [Fuentes] had opened its email." *Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022).

Simply put, Defendant has not met its burden to show Plaintiffs were on notice of the Subscriber Agreement or Terms of Use. Absent that, Plaintiffs can neither be compelled to arbitrate nor have their case transferred to New York, and Defendant's twin Motions should be denied.

## LEGAL STANDARD

***Defendant Bears The Burden Of Establishing A Contract Was Formed.*** Defendant, "as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). That means that Defendant "has the burden to prove each element of a valid contract—including mutual assent" and notice. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). Defendant also "bear[s] the burden of demonstrating the existence of a contract and the inclusion of the forum selection clause in that contract." *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1115 (E.D. Cal. 2014).

Where, as here, there is no evidence that "a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory *only if*: (1) the website provides *reasonably conspicuous notice* of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, such as clicking a button or checking a box, that *unambiguously manifests his or her assent* to those terms." *Berman*, 30 F.4th at 856 (emphasis added).

***California Law Applies, But The Difference Is Immaterial.*** Defendant incorrectly assumes "New York law" governs because of a choice-of-law provision in its Terms of Use. MTC at 9. But this puts the cart before the horse, as the choice of law clause is only valid if it was formed in the first place. "Before we can determine the validity of the … choice of law provision in the contract … we need to figure out which [state]'s law controls the issue of contract formation… as if there were no choice of law clause." *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008). Plaintiffs, who are Californians, both purchased access to Defendant's League Pass and League Pass Premium in California, watched prerecorded videos in California, and had their PII disclosed in California. Therefore, Plaintiffs contend that California law applies.

However, "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Berman*, 30 F.4th at 855 (cleaned up). So "we need not decide which State's law governs because both California and New York law dictate the same outcome." *Id.* (cleaned up); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term.") (cleaned up).

## ARGUMENT

### I. DEFENDANT CANNOT SHOW THE HYPERLINK TO THE SUBSCRIBER AGREEMENT ON THE APP WAS REASONABLY CONSPICUOUS

#### A. The Context Of The Transaction Does Not Support Notice Because The One-Time Purchase Of A Season Long Subscription Undermines Notice

"In this case involving one-off transactions, reasonably prudent users of defendants' sites are unlikely to be on the lookout for fine print." *Chabolla*, 129 F.4th at 1155 (cleaned up). Thus, "websites inviting one-off transactions will be held to higher standards than those proposing continuing associations." *Berman*, 30 F.4th at 869. Here, the hyperlinked terms appear on a page inviting consumers to make a one-time purchase of $99.99 to receive access to an entire season of NBA content. This "transaction could easily be considered a one-time purchase of credits … rather than the formation of an ongoing relationship with [Defendant]." *Chabolla*, 129 F.4th at 1155. While the page mentions in the eleven-line block of text that the subscription will automatically renew, this alone is not enough. *See id.* (holding auto-renewing terms were inconspicuous); *Godun*, 135 F.4th at

712 (same). "For such transactions, it must be clear that consumers agree not only to the one-time purchase, but also to the continuing purchases going forward." *Godun*, 135 F.4th at 712. Here, it is not, and so notice is undermined.

### B. The Design And Content Of The App Has Multiple Indicia Of Inconspicuousness, Precluding A Finding Of Notice

Even if the context of the transaction supported notice (and it does not), the Court must consider "both visual conspicuousness and the context of the transaction in totality." *See Godun*, 135 F.4th at 713; *see also Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 850 (S.D. Cal. 2024) (finding "the Court must still analyze the hyperlink's visual placement to determine whether it is sufficiently conspicuous to put a reasonably prudent user on notice," regardless of context) (cleaned up). On this point, Defendant cannot show the hyperlink was reasonably conspicuous for at least the reasons set forth below.

#### *1. The Hyperlink Is Buried In A Large Paragraph Of Text Detailing Other Terms*

As an initial matter, the hyperlink to the Subscriber Agreement is buried in eleven lines of text and is located ten lines away from the "Agree and Subscribe" button—all of which is in the smallest font on the page:

> By clicking "Subscribe" you acknowledge that you have read and agree to the Subscriber Agreement. You also understand that after any promotional period (if applicable), your subscription will automatically renew at the end of each billing cycle. A monthly subscription will renew each month, a season-long subscription will renew the month prior to the following season, and annually thereafter at the latest subscription rates. You will be charged the total amount due per applicable billing cycle unless you cancel. Cancel your subscription at any time before the end of the billing cycle to avoid future charges through your My Account page or by contacting Customer Service. Cancellations are effective at the end of the billing cycle. NBA does not provide refunds or credits for partial months, seasons, or years.

Ebanyat Decl. at Ex. 1.[1] Courts have found no notice where a hyperlink was buried in a paragraph, even in cases where, unlike here, the hyperlink was in a different color than the surrounding text. *See, e.g.*, *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *10 (N.D. Cal. July 31, 2023) (no notice where "[t]he hyperlink to the 'Subscriber Agreement' is buried in six lines of text and is located five lines away from the 'Agree and Subscribe' button," even though hyperlink was a different color); *Morrison v.*

[1] In fact, there are other hyperlinks (those to "My Account" and "Customer Service") that are even closer to the action button than the one to the Subscriber Agreement. This also distracts from notice. *See Morrison*, 756 F. Supp. 3d at 850 (finding no notice where the "webpage contains a second hyperlink" that was even closer to the action button).

*Yippee Ent., Inc.*, 756 F. Supp. 3d at 850 (same where hyperlink was in a different color, but was "within an eight-line paragraph, all in font smaller than that on the page generally"); *Berman*, 30 F.4th at 857. ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print.")

Moreover, not only is other text in the paragraph closer to the "Agree and Subscribe" button, "relatively lengthy paragraph [] largely focuses on" automatic renewal of subscriptions. *Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 3621830, at *6 (N.D. Cal. Aug. 16, 2021) (finding no notice where paragraph containing hyperlink "largely focuses on and promotes free shipping and the VIP Insider program"). This extraneous text "suggest[s] to a user that once they subscribe and read the language underneath the subscription buttons, the user has considered all relevant conditions to the subscription, and the subscription process is over." *Tejon v. Zeus Networks, LLC*, 725 F. Supp. 3d 1351, 1357 (S.D. Fla. 2024); *see also See Seneca v. Homeaglow Inc.*, 2024 WL 750029, at *4 (C.D. Cal. Feb. 7, 2024), *aff'd*, 2025 WL 852896 (9th Cir. Mar. 19, 2025) (finding no notice of hyperlink where was contained "in the body of [a] paragraph" whose "only conditions … address[ed] consent to contact from Homeaglow and the selected cleaner regarding the customer's booking"); *Herzog. v. Super. Ct.*, 101 Cal. App. 5th 1280, 1298 (2024) ("A user would have no reason to believe, given … the content of the text … that by clicking the checkbox next to 'I agree to Terms of Use' they were entering an agreement that concerned any matters other than the scope of the user's privacy waiver and management of the user's personal information.").

### 2. *The Hyperlink To The Subscriber Agreement Is Merely Underlined And In The Same Color As The Surrounding Text*

The hyperlink is also in the smallest font on the page, is the same font color as the other text in the paragraph, and the hyperlink is only underlined. Ebanyat Decl. at Ex. 1. The Ninth Circuit has made clear that "[a] web designer *must do more than simply underscore the hyperlinked text* in order to ensure that it is sufficiently 'set apart' from the surrounding text." *Berman*, 30 F.4th at 857 (emphasis added). In other words, "[s]imply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id.*

In the wake of *Berman*, the overwhelming majority of courts in the Ninth Circuit have refused to enforce terms, where, as here, they were merely differentiated by underlining—and even where the hyperlink was not buried in a length paragraph of text. *See*, *e.g.*, *Godun*, 135 F.4th at 707 (affirming district court's holding that there was no notice of hyperlinks where "the hyperlinked terms were only underlined and not otherwise sufficiently set apart from the rest of the text notice") (cleaned up); *Lopez*, 2023 WL 8594393, at *1 ("[A]lthough the term 'TOS' is underlined, this alone is insufficient to alert a reasonably prudent internet user that a clickable link exists.") (cleaned up); *Edwards v. MUBI, Inc.*, --- F. Supp.3d ----, 2025 WL 985130, at *11 (N.D. Cal. Mar. 31, 2025) (finding that "[t]he underlined phrases 'Terms of Service' and 'Privacy' are hyperlinks, but they appear in the same tiny white font as the rest of the sentence, rather than in blue") (cleaned up); *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, *4 (C.D. Cal. Jan. 23, 2025) (finding no notice where "the hyperlinks are merely underlined (on the website) or bolded (in the app)" and collecting cases finding the same); *Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1121 (N.D. Cal. 2024) ("Because Millionaire Match's links were underlined but did not appear in a contrasting color, the Court must conclude, under *Berman*, that they were not reasonably conspicuous enough to put Mr. Massel on notice of the terms and that Mr. Massel therefore cannot be said to have assented to them."); *Rocha v. Urb. Outfitters, Inc.*, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) (finding no notice where hyperlink was only underlined); *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) (same).[2]

Against this collection of decisions—among many others—Defendant claims *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024), supports its position. It does not. In *Keebaugh*, the terms were not "simply underscore[d]," but also distinguished on an uncluttered screen with barely any text by "two distinct interactable boxes … the second, labeled 'Terms of Service,' which hyperlinks players to the full text of the Terms of Service when pressed." *Id.* at 1011. And, of course, the hyperlink

[2] *Serrano* also found *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022), to be unpersuasive. "*Pizarro* cited *Berman* but did not address the Ninth Circuit's statement that the notice must do more than simply underscore the hyperlinked text. *Berman*, of course, is binding precedent, while *Pizarro* is not." *Serrano*, 666 F. Supp. 3d at 1097 n.1.

was not buried in a lengthy paragraph. *Id*. So, while the Ninth Circuit has clarified that "there are not per se rules about what's necessarily inadequate" (*Godun*, 135 F.4th at 710), "the failure to identify the hyperlink to Defendant's Terms of Use by more than mere underlining is highly significant under *Berman*." *Serrano*, 666 F. Supp. 3d at 1096. And no one can credibly dispute that Defendant could have drawn better attention to the fact a hyperlinked lurked in the NBA's dense thicket of text.

*3. The Hyperlink Is In Tiny Font And Does Not Stand Out From The Clutter Of The Page*

Exacerbating the lack of notice, the hyperlink here "is printed in a tiny [black] font considerably smaller than the font used in the surrounding website elements … [a]nd the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Berman*, 30 F.4th at 856-57 (cleaned up); *see also* Ebanyat Decl. at Ex. 1. Here, those more prominent elements include (i) promotional language with a large, yellow "Upgrade Now" button, imploring users to "[u]pgrade to League Pass Premium"; a "blackout notice" information field, with a hyperlink to "learn more" that is in darker and more distinguishable font than the one to the Subscriber Agreement; (iii) large buttons to pay via Apple Pay or PayPal; and (iv) multiple form fields to enter in credit card or bank account information, as well as a form field for a promo code:

//

//

//

//

//

//

//

//

//

//

//




Ebanyat Decl. at Ex. 1. These more prominent elements "naturally direct[] the user's attention everywhere else" but the hyperlink to the Subscriber Agreement. *Berman*, 30 F.4th at 857; *see also Sadlock*, 2023 WL 4869245, at *10 (finding no notice where "[t]here are a number of other elements on the screen that distract from the reference to the Subscriber Agreement" that "are all in larger size font and employ design elements such as bolding to catch the eye," and "the bulk of the remaining screen is devoted to payment for the service being purchased"); *Rocha*, 2024 WL 393486, at *5 ("[T]the page where Urban Outfitters includes the disclosure … contains other information that is more likely to draw a consumer's attention … include[ing] the order summary, contact, shipping, and payment information, options to select delivery dates, and other clickable boxes such as an option to opt-in to receive text messages and to add a 'promo code.'"); *Burzdak*, 2021 WL 3621830, at *6 ("[I]n the instant case, visual prominence – through bolding, a different color, and/or capitalization

– is given to other text … and thus attention is diverted away from the Terms of Use."); *Edwards*, 2025 WL 985130, at *8 ("The distracting design of the Home Page draws the user's attention away from the barely readable critical text.") (cleaned up)

In fact, the text is so small and the other elements of the page are so prominent and distracting that Defendant felt compelled to use "a cropped, close-up screenshot of the purchase webpage, with most of the webpage omitted." *Ballou*, 46 F.4th at 861; *see also* MTT at 3 (Figure 1). Defendant's: !

> apparent belief that the Court would be unable to locate the Terms without some extra emphasis *further demonstrates just how inconspicuous the Terms hyperlink is*. If [Defendant] expects the Court—which is specifically tasked with locating and evaluating the presentation of the link—to struggle to find the Terms, *then it cannot expect a reasonable consumer … to have notice*.

*Anyasulu v. Tempur Sealy Int'l, Inc.*, 745 F. Supp. 3d 913, 919 (N.D. Cal. 2024) (emphasis added).

*4. The Hyperlinked Is Not Directly Above Or Below The "Agree And Subscribe" Button*

Finally, because the hyperlink is buried in long paragraph, ten lines away from the "Agree and Subscribe" button, it is "not located directly above or below the action … button." *Godun*, 135 F.4th at 711 (cleaned up); *see also Chabolla*, 129 F.4th at 1157 (finding no notice because of hyperlink's "distance from relevant action items"). This too distracts from notice.

## II. DEFENDANT CANNOT SHOW THE HYPERLINK TO THE TERMS OF USE WITHIN THE SUBSCRIBER AGREEMENT WAS REASONABLY CONSPICUOUS

To be clear, the arbitration and forum selection clauses are *not* contained within the Subscriber Agreement. Ebanyat Decl. at Ex. 2. Instead, they are contained in the Terms of Use (*id.* at Ex. 4), which is a *separate document* hyperlinked within the Subscriber Agreement. Because Defendant failed to meet its burden to establish that Plaintiffs had reasonably conspicuous notice of the Subscriber Agreement from the sign-up page, Defendant likewise cannot show Plaintiffs were on notice of the Terms of Use. *See* Argument § I.A, *supra*. But more fundamentally, even if Plaintiffs were on notice of the Subscriber Agreement, it does not follow that Plaintiffs were also on notice of the Terms of Use contained within.

Online contract formation should not be a scavenger hunt. "It stretches credulity to assert that the actual page that is linked to the [page plaintiff] filled out does not govern that application, but rather another page linked to the page that is linked to the application does." *Ramirez v. Trusper,*

*Inc.*, 2024 WL 4479862, at *6 (N.D. Cal. Oct. 11, 2024) (quoting *McGhee v. N. Am. Bancard, LLC*, 2017 WL 3118799, at *3-4 (S.D. Cal. July 21, 2017), *aff'd*, 755 F. App'x 718 (9th Cir. 2019)). As such, the Ninth Circuit has held that "courts decline to enforce agreements where [as here] the terms are available only if users … complete a multiple-step process of clicking non-obvious links." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (collecting cases).

On this point, *Ramirez*, is instructive. There, the court refused to enforce the arbitration clause lying within a "terms page" because of the "the multi-step process an internet user must endure to reach the 'terms page' hyperlink further minimizes the chance that they will receive notice of the terms." *Ramirez*, 2024 WL 4479862, at *6. Specifically, the court found it was "unreasonable to expect an internet user to comprehend the circuitous path involving selecting a hyperlink labeled 'Telehealth Consent,' to reach another page with a hyperlink labeled 'terms page,' only to reach a page with a completely different title, 'Participation Agreement,' where they will find the terms of their agreement." *Id.*

The same concerns ring true here. Just to find the Defendant's Terms of Use, consumers would need to (i) notice the link to the Subscriber Agreement on the App, (ii) review the eleven-page Subscriber Agreement, (iii) notice a single-sentence in this eleven -page that contains a hyperlink to the *website's* Terms of Use; and (iv) scroll to sections 17-19 of this multi-page document to find the relevant clauses. *See generally* Ebanyat Decl. at Exs. 2-4. Defendant should not be permitted to bind users to *additional* agreements beyond the hyperlinked Subscriber Agreement by simply adding more hyperlinks to more documents in that hyperlinked agreement.

Citing *Wilson v. Hatch Bank*, 2024 WL 1355492, at *8 (S.D. Cal. Mar. 29, 2024) and *Shalomayev v. Altice USA, Inc.*, 2022 WL 2359406, at *6 (E.D.N.Y. June 30, 2022), Defendant argues that its Terms of Use are incorporated into its Subscriber Agreement. This misses the point. The issue here is not whether the Terms of Use are incorporated by reference, but whether Defendant gave Plaintiffs reasonably conspicuous notice of them in the first place. And "[t]he cases cited by [Defendant] to the contrary did not consider the multi-step process to access the arbitration clause [or forum selection clause]." *Ramirez*, 2024 WL 4479862, at *6. Indeed, neither of the cases cited by the NBA reference—let alone address—the issues raised in *Wilson v. Huuuge* or its progeny.

### III. DEFENDANT CANNOT SHOW THAT THE E-MAIL UPDATE PUT PLAINTIFF FUENTES ON NOTICE OF THE TERMS OF USE

Defendant argues "the February 2023 Notice Email provided conspicuous notice of the 2023 Terms of Use" and that Plaintiff Fuentes "receiv[ed] the February 2023 Notice Email." MTT at 12:1-5. As an initial matter, Defendant admits that no such argument applies to Plaintiff Whalen. *Id.* at 12:17-24. Regardless, Defendant is not correct that the e-mail put Plaintiff Fuentes on notice.

Courts in this Circuit have held that it is insufficient proof of inquiry notice for a defendant to merely show that it sent out an email to a plaintiff informing them of updates to legal terms and that the plaintiff continued to use the services afterwards. *See Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080, at *3-4 (N.D. Cal. June 29, 2022); *see also Ireland-Gordy v. Tile, Inc.*, 760 F. Supp. 3d 946, 955 (N.D. Cal. 2024) ("Courts have declined to adopt a per se rule finding that inquiry notice is satisfied in any instance in which a defendant sends an email giving notice of updated terms and a plaintiff continues to use the defendant's service.") (internal quotations omitted); *Pliszka v. Axos Bank*, 2024 WL 4194338, at *6 (S.D. Cal. Sept. 13, 2024) ("[I]n this case, absent evidence that Plaintiff acknowledged receiving the change-of-terms e-mail, the Court declines to conclude that Plaintiff manifested his intent to use silence as a means of acceptance.").

In *Sifuentes*, for instance, the court found the defendant had not shown the plaintiff's unambiguous assent to updated legal terms when notified via email. *Sifuentes*, 2022 WL 2673080, at *4. Specifically, the court reasoned "there is nothing in the record to suggest that Plaintiff saw or read the email, such as a read receipt reflecting that Plaintiff opened the email," and "[t]here is nothing in the record to suggest that Plaintiff could not use the service until he indicated his assent, that he would have been advised of new terms and conditions while using Defendant's services, or that Defendant ever tracked whether Plaintiff had opened its email." *Id.*, at *4. This tracked *Berman*'s reasoning that "[e]ven if the email alone could be considered 'reasonably conspicuous notice,' [the p]laintiff took no action to unambiguously manifest his assent." *Id.* (citing *Berman*, 30 F.4th at 856 (requiring the consumer to "take[] some action, such as clicking a button or checking a box" to form an enforceable contract under inquiry notice theory)).

Contrast those facts with *Sadlock*, which Defendant claims supports its argument. In *Sadlock*, the defendant submitted evidence that not only was the e-mail sent to the plaintiff, the plaintiff had actually received and opened the e-mail. *See Sadlock v. Walt Disney Co.*, Case. No. 3:22-cv-9155, ECF No. 18-3 at ¶ 9 and Ex. B (N.D. Cal. Apr. 6, 2023). Thus, unlike here, there could be no dispute that the plaintiff "did not receive or see the emails in question." *Sadlock*, 2023 WL 4869245, at *13. Still, the court stopped from creating a bright line rule that an e-mail, in addition to continued use of services, constitutes sufficient inquiry notice. *Id.* ("The Court is not opining that, in any instance in which a defendant sends an email giving notice of updated terms and a plaintiff continues to use the defendant's service, the inquiry notice test has been satisfied. Indeed, the Court can see potential problems with a defendant relying on notice via email.").

Even if the e-mail placed Plaintiff Fuentes on notice of the Terms of Use (and it did not), the NBA could not unilaterally modify the Terms of Use in the middle of its performance. *See* Ebanyat Decl. ¶¶ 29-30. Plaintiff Fuentes paid for a *full year* of NBA content on November 2022, but the NBA tried to change the terms of that deal in February 2023, only half way through its performance—without providing any consideration in return. This is unenforceable. As another court found in a similar case, "[a]fter accepting Plaintiffs' valuable payment and presenting Plaintiffs with one set of 'Terms & Conditions,' [defendant] then sought to impose additional terms and conditions when Plaintiffs scheduled the service for which they had already paid and to which they were legally entitled. In other words, [defendant] sought to extract additional value—such as abandoning important rights—from Plaintiffs without providing any additional consideration in turn." *Seneca*, 2024 WL 750029, at *6. This cannot form a contract. *See id.* (denying motion to compel arbitration).

## IV. THERE IS NO BASIS TO TRANSFER THIS DISPUTE TO THE SOUTHERN DISTRICT OF NEW YORK

As to the Motion to Transfer only, Defendant contends its forum selection clause is enforceable. MTT at 15:12. As discussed above, the forum selection clause is unenforceable for lack of notice. *See* Argument §§ I-III, *supra*. Even so, Defendant's cited grounds do not justify transfer. In particular, Defendant claims "the Southern District of New York is currently presiding over another VPPA-related action against the NBA." MTT at 15:19-20 (citing *Salazar v. National Basketball Association*, Docket

No. 1:22-cv-07935-JLR (S.D.N.Y.). The *Salazar* action has no overlap with this one, given that it concerns data disclosures on a different online platform using different tracking tools. *Compare Salazar*, 1:22-cv-07935, ECF No. 1 ¶¶ 50-68; *with* Compl. ¶¶ 128-148. And in any event, Defendant is also dealing with yet a third VPPA action which is also in *this* District, which concerns yet a third online platform. *See Fan v. NBA Properties, Inc.*, Case No. 23-cv-5069-SI (N.D. Cal.). Thus, this factor is neutral.

## V. PLAINTIFFS RESERVE THE RIGHT TO CHALLENGE THE ENFORCEABILITY OF THE ARBITRATION CLAUSE

Because there was no notice of the arbitration clause or forum selection clause (*see* Argument §§ I-III), the Court need not reach whether the arbitration clause was enforceable. And to the extent there was notice, as Defendant notes, "disputes related to whether a dispute must be arbitrated" should be resolved in New York. MTT at 7:22-24. So, to the extent the Court transfers this case to New York (and it should not), Plaintiffs expressly reserve the right to challenge the enforceability of Defendant's arbitration procedures. In particular, Defendant's mass arbitration procedures (*see* Ebanyat Decl. Ex. 4 at ¶ 17), may be unconscionable, or render Defendant's entire agreement unconscionable. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681-87 (9th Cir. 2024). But to the extent the Court finds Plaintiffs were on notice of the arbitration and forum selection clauses (and it should not), a New York court must hear that argument.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Court deny Defendant's Motions in their entirety.

Dated: June 2, 2025

Respectfully submitted,

By: */s/ Stefan Bogdanovich*
Stefan Bogdanovich

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 N. California Boulevard, Floor 9
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

E-Mail: ltfisher@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiffs*